UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
INTERNATIONAL BUSINESS MACHINES      :
CORPORATION,                                                    :
        Plaintiff,                                                      :
                                                                                 :    **MEMORANDUM DECISION**
v.                                                                             :
                                                                                 :    7:11-cv-951 (VB)
AMY DALE,                                                              :
        Defendant.                                                   :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff International Business Machines Corporation ("IBM") brings this action asserting a state law contract claim related to defendant Amy Dale's resignation from her employment with IBM. In her answer, defendant asserted counterclaims for fraud, negligent misrepresentation, fraudulent inducement, breach of contract, and breach of the covenant of good faith and fair dealing. Plaintiff has filed a motion to dismiss defendant's counterclaims (Doc. #14), which, for the reasons set forth below, is granted.

      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

## BACKGROUND

      For purposes of ruling on a motion to dismiss, the Court accepts all factual allegations of the amended complaint and answer as true.

      Dale was employed by IBM as District EA SAP Partner. As an employee, Dale participated in the IBM PWCC Acquisition Long-Term Performance Plan ("IBM Plan"). Pursuant to the IBM Plan, Dale received stock options four times. These options would be canceled or rescinded if Dale were to leave IBM to work for a competitor within twelve months. Dale exercised her options on 642 shares on October 12, 2009; on 578 shares on May 8, 2010;

and on 111 shares on June 8, 2010.  She allegedly received gains of $100,827.11 from the exercise of her options.

On July 9, 2010, Dale announced her resignation from IBM to join Accenture PLC, with her last day to be July 16.  At the time, IBM inquired as to where Dale was going to work.  She did not specify her new employer to IBM, only saying that she would be joining a peer of Deloitte LLP and Ernst & Young LLP, both firms IBM considered to be peers rather than competitors.  If Dale was leaving to join a competitor, the usual practice would be for her to leave immediately or within one week.

Dale asserts her unnamed manager, IBM's Enterprise Application Lead, told her that IBM considered Deloitte and Ernst & Young to be partners.  Therefore, he urged her to stay for the full four weeks following the announcement of her resignation.[1]  He told Dale that she would be deemed as not leaving for a competitor if she stayed an additional four weeks.  Dale confirmed this position with an IBM lawyer and two other executives.  IBM's position was consistent with its conduct a month earlier with a different employee.  With such assurances, Dale stayed at IBM until July 30.

On July 28, Dale received an email from an IBM associate general counsel stating that Dale had represented that her new employer is not an IBM competitor.  If that were to change, the counsel wrote, she was instructed to notify IBM.  On July 30, 2010, Dale resigned from IBM to join Accenture.

By letter dated November 8, 2010, IBM rescinded the options exercised by Dale and

---

[1] Although defendant claims her manager asked her to stay for an additional four weeks, the dates referenced in the answer indicate she was asked to stay for an additional two weeks beyond when she initially planned to leave.

made demand for payment of Dale's gains, based on its claim that Accenture is a competitor to IBM. Upon receipt of the letter, Dale spoke to her former manager at IBM who advised her to ignore the letter. Dale has refused to make payment on the demand.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is obliged to amplify a claim with some factual allegations to allow the court to draw the reasonable inference that the defendant is liable for the alleged conduct. Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937 (2009).

**I.      Claims for Damages**

Plaintiff first moves to dismiss defendant's counterclaims because defendant has failed to adequately plead damages. In her answer, defendant seeks damages in the amount of $150,000 without an explanation for how she was damaged. In her opposition to plaintiff's motion, defendant specifies she is entitled to damages because (1) the salary she received from July 16 through July 30, 2010 was not commensurate with the value of her time to IBM; (2) she was unable to relax and spend time for herself during those two weeks; and (3) she is being forced to bear the expense of defending this litigation. Both sides agree that Dale was paid her full and usual salary through July 30.

Defendant's claim for damages is rejected for three reasons. First, an allegation that defendant "suffered damages" without particular facts as to how she was damaged does not satisfy Twombly and Iqbal. See Kopperl v. Bain, 2010 U.S. Dist. LEXIS 89195, at *11 (D. Conn. Aug. 30, 2010). Second, none of these purported injuries were pleaded in the answer. As such, the Court will not credit them now. Third, each one is legally specious.

In support of her claim about her value to IBM, defendant relies upon Hanlon v. MacFadden Publications, Inc., 302 N.Y.2d 502 (1951), in which the New York Court of Appeals held that where an employer had lied about the reasons for a reduction in an employee's salary, the employee was entitled to damages calculated as the difference between what he earned and his value to the company. Here, defendant does not allege plaintiff reduced her salary or otherwise misrepresented her salary. In fact, defendant continued to receive the same salary until her departure. Accordingly, there can be no claim that she incurred monetary damages in the form of a reduced salary before her departure.

Concerning her opportunity cost argument – that is, she lost her time to relax and spend it as she chose – defendant cannot plausibly argue she was injured by being forced to work when she in fact chose to work. Defendant agreed to work at her then-current salary for two additional weeks. She cannot now claim she was injured by this. See Kopperl, 2010 U.S. Dist. LEXIS 89195, at *11-12 (rejecting similarly argument because it was too speculative). Nor can she maintain she is entitled to nominal damages for any such injuries in this regard. Under New York law, nominal damages for tort injuries are only available to protect an "important technical right." Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 95-96 (1993). As the Court of Appeals stated

> To recognize nominal damages element[s] of tort claims would be to wrest the cause of action from its traditional purposes – the compensation of losses – and to use it to vindicate nonexistent or

>amorphous inchoate rights when . . . there is no compelling reason to do so.

Kronos, Inc. v. AVX Corp., 81 N.Y.2d at 96.  The injuries described do not constitute an important technical right for which nominal damages are appropriate.

Finally, defendant's argument about the expense of litigation is also futile given the American rule of fees.  That is, each party bears the expense of prosecuting or defending its action unless a statute provides otherwise.  See, e.g., Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 249 (1975).  Defendant's claim for damages is not ripe and was not pleaded in her answer.  Furthermore, the Court will not permit her to amend her answer indirectly through her opposition to the current motion.  Accordingly, the Court grants the motion to dismiss the counterclaims for a failure to plead damages.  Her inability to demonstrate legally recognized damages is fatal to all of defendant's counterclaims, and the Court dismisses them without prejudice for this reason.

**II.    Claim for Fraud**

The Court also dismisses defendant's fraud counterclaims pursuant to Fed. R. Civ. P. 9(b).  Rule 9(b) provides defendant's counterclaims sounding in fraud – her counterclaims for fraud, negligent misrepresentation, and fraudulent inducement – must be "state[d] with particularity."  See Wood v. Applied Research Assocs., 328 Fed. Appx. 744, 747 (2d Cir. 2009); Costigan v. CitiMortgage, Inc., 2011 U.S. Dist. LEXIS 84860, at *27 n.100 (S.D.N.Y. Aug. 1, 2011) ("Rule 9(b) applies to both fraud claims and negligent misrepresentation."); Burns v. Del. Charter Guar. & Trust Co., 2011 U.S. Dist. LEXIS 61375, at *35 (S.D.N.Y. June 8, 2011) (citing cases applying Rule 9(b) to claims of negligent misrepresentation).  To satisfy the pleading requirements of Rule 9(b), defendant's allegations must (1) specify the statements that defendant

contends were fraudulent, (2) identify the speaker of those statements, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). Furthermore, defendant's allegations must provide facts "that give rise to a strong inference of fraudulent intent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (quoting Acito v. IMCERA Grp., Inc., 47 F.3d 47, 52 (2d Cir. 1995)). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Shields, 25 F.3d at 1128.

The first three counterclaims are dismissed pursuant to Rule 9(b). Defendant's allegations are anonymous. Although defendant referred to one of the individuals with whom she interacted by reference to his title, plaintiff and the Court are entitled to know this individual's name. In addition, defendant refers to IBM lawyers and executives. To the extent defendant relies upon these individuals' statements as being fraudulent or misrepresentations, defendant must identify them as best she can.

Defendant's substantive allegations as to the fraud are similarly insufficient as a matter of law. The gist of defendant's allegations is she questioned whether her leaving IBM to join an unspecified company that she believed was a peer would constitute a "detrimental activity" under the terms of the IBM Plan. Basically, defendant posed a question with a material fact omitted. Once IBM found out that she went to Accenture, it sought to recover the stock options paid to her because IBM deemed Accenture a competitor. Although the Court in no way finds that plaintiff has met its burdens on its claim, it is clear that IBM's actions as alleged by plaintiff cannot constitute fraud, negligent misrepresentation, or fraudulent inducement. There is no

inference, based on these allegations, of a fraudulent intent required to state a claim under Rule 9(b).

### III. Breach of Contract Claim

Plaintiff seeks dismissal of defendant's breach of contract counterclaim on the basis that there is no contract between the parties.  Under New York law, a breach of contract counterclaim requires proof of (1) an agreement, (2) adequate performance by defendant, (3) breach by plaintiff, and (4) damages.  Fischer & Mandell LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011).  The Court finds defendant has sufficiently alleged a breach of contract claim insofar as defendant alleges the parties agreed that defendant would remain at IBM for an additional two weeks and plaintiff would deem defendant as not leaving to join a competitor.  These allegations properly allege that the parties reached an agreement.  Although defendant did not know what firm Dale would be joining, based on the allegations, IBM waived its right to find out before entering into agreement.

The fatal aspect of defendant's counterclaim is her inability to show damages.  Defendant received her salary and options due from IBM.  At this juncture, she is whole.  If a jury were to find for plaintiff in this action, she would then suffer an injury as a judgment would be entered against her.  That injury, however, would not be legally actionable.

The parties' agreement cannot be a sword in this action because of the lack of damages suffered by defendant.  It can serve as a shield, however, as a defense to plaintiff's claims.  The Court dismisses defendant's breach of contract counterclaim, but does so without prejudice to defendant raising the existence of an agreement as a defense to this action.

In light of defendant's inability to demonstrate damages for a breach of contract, her counterclaim for a breach of the covenant of good faith and fair dealing is also dismissed for

failure to show any damages due to the breach.

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff IBM's motion to dismiss (Doc. #14) defendant Dale's counterclaims. Defendant may file an amended answer no later than September 19, 2011.

The Clerk is instructed to terminate this motion.

Dated: September 9, 2011
White Plains, New York

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge